UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DARRELLE NEAL,** | § | |
| **as Representative of the Estate of** | § | |
| **TERRELLE HOUSTON** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:12-cv-1733** |
| | § | |
| **CITY OF HEMPSTEAD, TEXAS,** *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss"; Doc. No. 40). After considering the Motion, the response thereto, and the applicable law, the Court concludes that Defendants' motion should be **GRANTED**.

## I.  BACKGROUND[1]

This lawsuit arises from the death of Terrelle Houston ("Houston"). Houston was raised by Plaintiff Darrelle Neal, who is his maternal aunt. FAC ¶ 2. After Houston's death in 2010, Neal brought this suit individually and as representative of the Estate of Terrelle Houston ("the Estate").

On the night of June 8, 2010, Defendant Sgt. Byron Fausset, an employee of the Hempstead Police Department ("HPD"), was responding to a 911 hang-up call that had come in from a phone line at or near the Willowchase Apartments in Hempstead, Texas. *Id.* ¶ 15. Shortly after arriving at the Willowchase Apartments, Fausset encountered Houston, a twenty-two-year-old male. *Id.* ¶¶ 15-16. Houston attempted to run away from Fausset, but tripped and fell to the

---

[1] The following facts are drawn from Plaintiff's First Amended Original Complaint ("FAC"; Doc. No. 36) and are accepted as true for purposes of the pending motion.

ground. *Id*. ¶ 16. Fausset then drew his Taser weapon and shocked Houston. *Id.* Both before and after gaining control of Houston and restraining him, Fausset repeatedly shocked Houston with the Taser weapon until he became unresponsive. *Id.* Throughout this incident, Houston was lying face down, restrained, in a pool of water; he was also unarmed. *Id.* Houston remained alive for an uncertain period of time, estimated to be one or two hours. *Id*. ¶ 26. Despite being aware that Houston was struggling to breathe, Fausset delayed calling 911 and did not offer Houston any emergency assistance. *Id.* ¶¶ 26-27.

Neal brought this suit against Fausset, Police Chief David Hartley ("Hartley"), and the City of Hempstead ("City") on June 8, 2012. Neal's complaint contains several claims against Hartley in his official capacity, the City, and Fausset in both his individual and official capacities under 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth, Eighth, and Fourteenth Amendments. *Id.* ¶¶ 30–42. Neal also alleges state common law torts arising out of the above facts. *Id.* ¶¶ 43–44. Neal seeks to hold the City liable for these torts under the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code §§ 101.001-101.109. The First Amended Original Complaint also includes claims under the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code §§ 71.021-71.022, which Neal brings as representative of the Estate. FAC ¶ 46. Neal seeks actual and punitive damages, as well as attorneys' fees and costs.

Neal originally brought this suit claiming to be Houston's mother. However, she is not his biological mother, but, rather, his maternal aunt. Defendants initially moved to dismiss the case on a number of grounds, including for lack of jurisdiction, alleging defects in Neal's capacity to bring suit. Doc. Nos. 9, 24. Neal subsequently sought dismissal of her individual claims and a stay of the case pending her appointment as administrator of the Estate. Doc. Nos. 19, 21. The Court granted Neal time to cure any defects in capacity and denied the Defendants'

motions. Doc. No. 27. The Court also granted Neal's motion and stayed the case pending her appointment as administrator of the Estate. On June 11, 2013, Neal advised the Court that she had been named administrator of the Estate. The Court then lifted the stay. Neal filed an amended complaint, Doc. No. 36, and shortly after that, Defendants filed the pending motion to dismiss pursuant to Rule 12(b)(6).

## II.  LEGAL STANDARD

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d. 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id.* Thus, a pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678-79 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). A court may consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that the plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

Nevertheless, a court may not assume that a plaintiff can prove facts that were not alleged. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986). Indeed, dismissal is appropriate where the complaint "lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted). Even so, "[m]otions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

Finally, the Federal Rules of Civil Procedure provide that a court "should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[G]ranting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for

failure to state a claim." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (citation omitted). A court should generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Id.* Courts must have a "substantial reason" to deny leave to amend, but leave to amend is not automatic. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (citation omitted). In deciding whether to grant leave to amend, courts may consider many factors, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Id.* (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

### III. ANALYSIS

By this motion, Defendants seek to dismiss the claims against Hartley and Fausset in their official capacities, as well as all Eighth Amendment claims, and the Texas state law claims against the City. Defendants argue that the claims against Hartley and Fausset in their official capacities amount, legally speaking, to nothing more than claims against the City. Therefore, Defendants contend, those official-capacity claims are duplicative of the claims brought against the City and should be dismissed. Defendants argue further that under prevailing precedent, an individual's Eighth Amendment rights are implicated only after a conviction. Here, they reason, Plaintiff has not pleaded a conviction, so there can be no rights protected by the Eighth Amendment, and no Eighth Amendment violations. Thus, they assert, all Eighth Amendment claims should be dismissed as well. Finally, Defendants also read the allegations against Fausset to constitute intentional torts, and argue that the state law tort claims against the City predicated

5

on those allegations must be dismissed for want of a proper waiver of sovereign immunity, or because they fall into the intentional tort exception to Texas's waiver of sovereign immunity.[2]

Plaintiff responds that she is seeking to hold Hartley liable for his actions to implement unconstitutional policies and his failures to hire, train, and/or supervise Fausset. She explains that her claims against Fausset concern his conduct during the events in question. She maintains that actions against government employees for their unconstitutional conduct are available, even in their official capacities, as is supervisory liability. With respect to her Eighth Amendment claims, Plaintiff concedes that there was no conviction here, and explains that she is bringing Eighth Amendment claims only "to the extent those rights are protected and presented through the due process guarantees of the Fourteenth Amendment." Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss ¶ 11 ("Plaintiff's Response"; Doc. No. 45). Plaintiff clarifies that her claims against the City relate to Fausset's negligent use of City property – the Taser weapon – which resulted in Houston's death. She argues that Fausset's conduct is rightly analyzed under negligence law, and not under intentional tort law. Finally, Plaintiff requests leave to amend should the Court find any of her pleadings insufficient, or, at the very least, if the Court dismisses the complaint, that the Court dismiss the state law claims without prejudice to refiling.

### A. Official-Capacity Claims

Long-settled federal law holds that "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). "Suits

---

[2] Defendants also appear to suggest that the claims against Fausset should be dismissed because they were brought against the City as well and that any claims resting on vicarious liability and *respondeat superior* fail as a matter of law. However, Defendants mention these issues only in passing in the short "Summary of the Argument" section of their brief. *See* Mot. to Dismiss ¶¶ 7, 9. Nowhere do they provide the Court with any legal argument in support of these assertions. Accordingly, the Court will not entertain these suggestions.

against state officials in their official capacity therefore should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). The Fifth Circuit has held that it is appropriate to dismiss constitutional claims against government officials in their official capacities when the "allegations duplicate claims against the respective governmental entities themselves." *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). However, the Fifth Circuit has also determined that dismissal of such claims as duplicative can be improper when the claims against the government officials rely on different theories of liability than the claims against the governmental unit. *See Abdeljalil v. City of Fort Worth*, 189 F.3d 466, 1999 WL 511355, at *1 & n.2 (5th Cir. June 22, 1999) (holding that dismissal as "duplicative" was inappropriate because official-capacity claims were based on different theory of liability than claims against city).

The Supreme Court noted in *Graham* that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly." 473 U.S. at 167 n.14 (citation omitted). Here, Plaintiff has done just that; in addition to the suits against Hartley and Fausset in their official capacities, Plaintiff has sued the City for the same violations. The Court finds that the official-capacity constitutional claims against Hartley and Fausset must be dismissed.

Plaintiff argues that the official-capacity claims against Hartley are based on theories of liability involving his "failure to hire/train/supervise" Fausset – what Plaintiff views as "implementation of [] unconstitutional policies." Pl.'s Resp. ¶ 9 (citing *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992)). However, the Court does not see, in these pleadings, any distinction between Plaintiff's theory of the City's liability and her theory of Hartley's official-capacity liability. To the extent that those claims are not actionable against the

City because there is no *respondeat superior* liability for municipalities, they are also barred as official-capacity claims. *See Graham*, 473 U.S. at 166 ("in an official-capacity suit the [municipal] entity's 'policy or custom' must have played a part in the violation of federal law"). An official-capacity suit against a municipal officer is no different from a suit against the municipality itself, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), so a plaintiff cannot somehow expand the scope of municipal liability through the use of official-capacity suits. Accordingly, Defendants' motion to dismiss is granted as to the official-capacity claims against Hartley and Fausset. Plaintiff may replead them, if there is cause to do so under existing law, that is, if the official-capacity claims truly are predicated on different theories of liability. *See Abdeljalil*, 189 F.3d at *1 & n.2.

### B. Eighth Amendment Claims

Plaintiff's Eighth Amendment arguments are confusing. Plaintiff concedes that the Eighth Amendment does not protect individuals against pre-trial denials of medical care. *See* Pl.'s Resp. ¶¶ 11-12; *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (citing *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)). Plaintiff also concedes that Houston had no convictions at the time of his death. Pl.'s Resp. ¶ 11. Finally, Plaintiff further concedes that the Fourteenth Amendment governs claims of pre-trial denial of medical treatment, such as those she brings. *Id.* at ¶ 12. Nevertheless, Plaintiff maintains that her Eighth Amendment claims should go forward. While Plaintiff is correct that the pre-trial rights to medical treatment under the Fourteenth Amendment "are 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" that does not mean that a violation of those Fourteenth Amendment substantive and procedural due process rights is also a violation of the Eighth Amendment. *Id.* (quoting *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th

Cir. 1996) (en banc)). Accordingly, Plaintiff's Eighth Amendment claims are dismissed with prejudice, as repleading them would be futile.

### C. Sovereign Immunity

Defendants also move to dismiss the Texas common law tort claims which Plaintiff brings against the City. In Texas, "[u]nder the common-law doctrine of sovereign immunity, a municipality is immune from tort liability for its own acts or the acts of its agents unless the Texas Tort Claims Act ["TTCA"] waives immunity." *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998). "For a governmental entity to be held liable for the acts of its employee under the TTCA: (1) the claim must arise under one of three specific areas of liability; and (2) the claim must not fall within an exception to the waiver of sovereign immunity." *Holland v. City of Houston*, 41 F. Supp. 2d 678, 710 (S.D. Tex. 1999).

The TTCA, in Section 101.021 of the Texas Civil Practice and Remedies Code, waives sovereign immunity for torts involving the use of motor-driven vehicles or equipment and for the condition or use of real or personal property. To state a claim based on the waiver provision relating to the use of personal property:

> [A] plaintiff must allege (1) that the property was used or misused by a governmental employee acting within the scope of his or her employment and (2) that the use or misuse of the property was a contributing factor to the injury. The negligence of the government employee must be the proximate cause of the injury and must involve a condition or use of tangible personal property under circumstances where there would be private liability. The property itself need not be the instrumentality of the alleged harm, but it must have been a contributing factor to the harm.

*Gonzales v. City of El Paso*, 978 S.W.2d 619, 623 (Tex. App.—El Paso 1998, no pet.) (citations omitted).

Defendants argue that Plaintiff's claims are barred because there has been no waiver of the City's governmental immunity for the claims she brings. They also argue that the claims are

barred by the statutory intentional torts exception to the waiver of governmental immunity. Plaintiff contends that her claims concerning Fausset's conduct fall within the waiver because, in accordance with the waiver, she alleges "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2). Specifically, Plaintiff argues that Fausset's City-issued Taser weapon qualifies as tangible personal property, and that Fausset's negligent use of it caused Houston's death.

Importantly, though, Section 101.057(2) of the Texas Civil Practice and Remedies Code explicitly excludes from this waiver of sovereign immunity those claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Further, "[w]here the essence of a claim under the TTCA arises from an intentional tort, allegations of negligence are insufficient to avoid the § 101.057 exception to liability." *Holland*, 41 F. Supp. 2d at 713. Thus, in *Texas Department of Public Safety v. Petta*, the Texas Supreme Court held that the plaintiff's claim for negligence was barred because the conduct she complained of was "the same conduct that form[ed] the basis of her assault and battery claim against" the officer, and that "specific conduct" was "clearly intentional." 44 S.W.3d 575, 580 (Tex. 2001). In view of *Petta*, courts in Texas have followed two separate lines of reasoning in determining whether a claim under the TTCA arises out of an intentional tort. *See City of Waco v. Williams*, 209 S.W.3d 216, 221-25 (Tex. App.—Waco 2006, pet. denied) (discussing cases).

The first approach applies "the proposition that a negligence claim under the TTCA cannot arise out of the *intentional acts*, including excessive force, of a law enforcement officer against a person." *Id.* at 221 (emphasis added). For example, the court in *City of Laredo v. Nuno*, 94 S.W.3d 786 (Tex. App.—San Antonio 2002, no pet.), held that the plaintiff's claims that the

officer injured her by improperly applying handcuffs and improperly placing her in the police car arose from the "intentional tortious act of using excessive force to arrest." *Id.* at 789; *see also Escobar v. City of Houston*, No. 04-1945, 2007 WL 2900581, at *43 (S.D. Tex. Sept. 29, 2007) (citing cases for proposition that police shootings are not intentional torts where there are allegations that the gun was discharged unintentionally).

The second approach inquires not whether the *act* was intentional, but whether the actor "*intended to cause injury.*" *Williams*, 209 S.W.3d at 223 (emphasis in original). For example, the court in *Durbin v. City of Winnsboro*, 135 S.W.3d 317 (Tex. App.—Texarkana 2004, pet. denied), held that the plaintiff was not barred by the intentional torts exception because, although the officer intentionally committed the act of bumping the plaintiff's car, "[t]here were no allegations that [he] intended to cause any injury by his actions, only that he intended to end the pursuit." *Id.* at 325.

The court in *Harris County, Texas v. Cabazos*, 177 S.W.3d 105 (Tex. App.—Houston [1st Dist.] 2005, no pet.), seemed to consider both factors – whether the act was intentional and whether the actor intended to cause the injury – and concluded that the officer's shooting of the plaintiff was an "intentional tort[ ] intended to cause injury to appellee," rather than an "act[ ] of negligence." *Id.* at 111–13. Likewise, the federal district court in *Huong v. City of Port Arthur* held that TTCA claims based on an a fatal shooting by an officer were barred because the plaintiffs "described their claims arising from the shooting as the intentional tort of excessive force," and, "regardless of the language used, it is clear that Plaintiffs' claims consist of intentional torts." 961 F. Supp. 1003, 1008–09 (E.D. Tex. 1997). And in *Holland*, a federal court in this district applied the "intentional act" inquiry and concluded that a police shooting was an intentional tort because there was "no allegation and no evidence in the record that [the officer]

did not intend to shoot [the plaintiff]," and "no indication . . . that the gun misfired or discharged inadvertently." 41 F. Supp. 2d at 713.

Here, whether the Court assesses the intent to act or the intent to injure, dismissal is appropriate. Plaintiff has not pleaded that Fausset's Taser weapon discharged inadvertently. Neither has she pleaded that Fausset did not intend to injure Houston when he repeatedly used his Taser weapon against him. Indeed, Plaintiff has pleaded that Fausset "repeatedly discharged" his Taser weapon upon Houston, while Houston was "lying in a shallow pool of water," both before *and after* he was restrained by Fausset. FAC ¶ 16. *See Galvan v. City of San Antonio*, No. CIV SA-07-CA-371-OG, 2008 WL 5395954, at * 5 (W.D. Tex. Dec. 19, 2008) (finding Taser use fell within intentional tort exception when decedent "'was already under arrest, subdued, face down, when the taser was deployed.'") (quoting the pleading at issue). The Court is aware that "the fact that an action for an intentional tort is barred does not prevent an injured party from pursuing a claim for simple negligence arising out of the same facts." *Hucker v. City of Beaumont*, 144 F. Supp. 2d 696, 708 (E.D. Tex. 2001) (citing cases). However, unlike in *Durbin*, for example, the facts pleaded here suggest an intent to use the Taser weapon and to injure, and do not support the allegations of negligence. *See McIntosh v. Smith*, 690 F. Supp. 2d 515, 539 (S.D. Tex. 2010) ("These allegations do not involve the accidental discharge of a weapon by a police officer but, instead, intentional decisions to tase . . . .")

Plaintiff argues that her claims do not arise from an intentional tort because she alleges that Fausset did not intend to *kill* Houston, only that Fausset's negligence resulted in Houston's death. Pl.'s Resp. ¶ 18. The Court agrees that a claim based on negligence causing death would not be barred by the intentional tort exception. The Court also agrees with Plaintiff that an intentional tort requires specific intent to cause injury. However, "an actor need not intend the

*specific injury* complained of for an intentional tort to be committed." *Williams*, 209 S.W.3d at

224 (citing *Tex. State Technical Coll. v. Wehba*, No. 11-05-00287-CV, 2006 WL 572022, at *2

(Tex. App.—Eastland Mar. 9, 2006, no pet.) (mem. op.)) (emphasis added). Plaintiff cites

*Durbin* in support, but the *Williams* case, which itself concerned repeated Tasering resulting in

death, is instructive. The *Durbin* court was unable to infer an intent to injure behind the alleged

intentional acts and, accordingly, found that the claims did not arise from an intentional tort. By

contrast, the *Williams* court found that the plaintiffs "alleged claims that 'arise out' of the

officers' use of force—repeated Tasering—against the decedent, which allege the intentional tort

of assault." 209 S.W.3d at 223. As in *Williams*, here, "[a]lthough the officers may not have

intended the result—Mr. Williams's death—the pleadings allege that they did intentionally shoot

him repeatedly with Tasers, and we would infer from their acts that they did intend an injury that

is more than mere offensive touching." *Id.* at 224.[3]

    As the cases discussed above illustrate, courts in Texas have rejected reliance on the

name used by a plaintiff to describe the alleged tortious actions, in favor of a functional inquiry

that considers whether the alleged misconduct constitutes an intentional tort. *See Holland*, 41 F.

Supp. 2d at 714 ("Plaintiffs cannot circumvent the intentional tort exception to waiver of

municipal liability by simply pleading negligence when the shooting event upon which they base

their claims is actually an intentional tort.") (quoting *Huong*, 961 F. Supp. at 1009); *Galvan*,

2008 WL 5395954, at *6 (rejecting an attempt by the plaintiffs "to brush aside the allegations in

their amended complaint by stating that the officers didn't intend to kill" the decedent). Although

---

[3] On these pleadings, *City of Lubbock v. Nunez*, 279 S.W.3d 739 (Tex. App.—Amarillo 2007, pet. granted) is distinguishable as well. There, the court adopted the *Durbin* court's reasoning (amongst others), and concluded that the pleadings alleged that the officer "took intentional actions, but do not allege that [the officer] intended to cause Nunez injury," which, the Court found, removed the claims from the intentional tort exception. *Id.* at 742-43. In so doing, the court noted that it "cannot infer [the officer's] intent to cause injury from his use of a taser, which appellees allege is advertised to be a 'non-lethal' or 'safe' incapacitation device." *Id.* at 743. *Nunez*, however, did not have the allegations of sustained and repeated Tasering while the decedent was incapacitated, allegations which are at the heart of this case.

Fausset may not have intended Houston's death, Plaintiff alleges that Fausset did shoot Houston repeatedly with his Taser weapon while Houston was restrained, lying in a pool of water, and unarmed. The Court is persuaded that this is sufficient to bring the claim within Section 101.057(2)'s intentional tort exception. The claims are dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated in this memorandum, Defendants' motion to dismiss is **GRANTED**. The state tort claims against the City and the official-capacity claims against Hartley and Fausset are **DISMISSED WITHOUT PREJUDICE**, and the Eighth Amendment claims are **DISMISSED WITH PREJUDICE**. Plaintiff may amend her complaint, and has until January 6, 2014 to do so. If Plaintiff chooses to amend her complaint, she is encouraged to identify with greater specificity under what law each of her claims arises and against which of the Defendants she brings each of them.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the fifth day of December, 2013.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE