UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DARRELLE NEAL,** | § | |
| **as Representative of the Estate of** | § | |
| **TERRELLE HOUSTON** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:12-cv-1733** |
| | § | |
| **CITY OF HEMPSTEAD, TEXAS,** *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM AND ORDER**

Pending before the Court in this civil rights action is Defendants' Motion for Summary Judgment. ("MSJ," Doc. No. 55, and "MSJ Memorandum," Doc. No. 56.) After considering the motion, the response thereto, the record, and the applicable law, the Court concludes that Defendants' Motion should be **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND[1]

This lawsuit arises from the death of Terrelle Houston in June, 2010. Mr. Houston was raised by Plaintiff Darrelle Neal, who is his maternal aunt. After Houston's death, Neal brought this suit individually and as representative of the Estate of Terrelle Houston ("the Estate").[2]

---

[1] The following facts are undisputed unless otherwise noted.

[2] Ms. Neal claimed to be Mr. Houston's mother when she brought suit. However, she is not his biological mother, but, rather, his maternal aunt. Defendants initially moved to dismiss the case on a number of grounds, including for lack of jurisdiction, alleging defects in Ms. Neal's capacity to bring suit. (Doc. Nos. 9, 24.) Ms. Neal subsequently sought dismissal of her individual claims and a stay of the case pending her appointment as administrator of the Estate. (Doc. Nos. 19, 21.) The Court granted Ms. Neal time to cure any defects in capacity and denied the Defendants' motions. (Doc. No. 27.) The Court also granted Ms. Neal's motion and stayed the case pending her appointment as administrator of the Estate. The Court lifted the stay after Ms. Neal advised the Court that she had been named administrator of the Estate. Ms. Neal filed an amended complaint, which is the live pleading. (Doc. No. 36.)

On the night of June 8, 2010, Defendant Sgt. Byron Fausset, an employee of the Hempstead Police Department ("HPD"), was responding to a 911 call that had come in from a telephone at the Willowchase Apartments in Hempstead, Texas. Shortly after arriving at the Willow Chase Apartments, Sgt. Fausset encountered Mr. Houston, a twenty-two-year-old male, near Apartment 107. Sgt. Fausset attempted to detain Mr. Houston in connection with a prior criminal trespass warning concerning the Willow Chase Apartments, but Mr. Houston ran from Sgt. Fausset. At some point, as Sgt. Fausset chased Mr. Houston through the apartment complex, Sgt. Fausset drew his Taser weapon and discharged it upon Mr. Houston a total of three times. After the third discharge, Mr. Houston was lying on the ground. Shortly, HPD Officer Todd Spillers joined Sgt. Fausset, and handcuffed Mr. Houston. Noticing that Mr. Houston was having difficulty breathing, Sgt. Fausset requested EMS assistance. The EMS responders arrived, worked to save Mr. Houston's life, and took him to Bellville General Hospital. Tragically, Mr. Houston was pronounced dead at that hospital at 1:12 a.m., on June 9, 2010.

Ms. Neal brought this suit against Sgt. Fausset, HPD Police Chief David Hartley, and the City of Hempstead ("the City") in June 2012. Ms. Neal brought several claims against Chief Hartley in his official capacity, the City, and Sgt. Fausset in both his individual and official capacities, under 42 U.S.C. §§ 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments. Ms. Neal also brought several state common law torts under the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code §§ 101.001-101.109, which arise out of the above facts. Finally, as representative of the Estate, Ms. Neal brought claims under the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code §§ 71.021-71.022. Pl.'s First Am. Original Compl. ¶¶ 30–44, 46 ("FAC"; Doc. No. 36). Ms. Neal seeks actual and punitive damages, as well as attorneys'

fees and costs. Defendants successfully moved to dismiss the official capacity, Eighth Amendment, and state-law tort claims. (Doc. Nos. 40, 47.) The pending motion followed.

## II. LEGAL STANDARD

### A. **Summary Judgment**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Importantly, "the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis v. Roche Biomed. Lab.*, 61 F.3d 313, 315 (5th Cir. 1995). Material facts are those whose resolution "might affect the outcome of the suit under the governing law . . . ." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). A court may consider any evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). However, neither conclusory allegations nor hearsay, unsubstantiated assertions, or unsupported speculation will suffice to create or negate a genuine issue of fact. *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shafer v. Williams*, 794 F.2d 1030, 1033 (5th Circ. 1986); *see* Fed. R. Civ. P. 56(c)(4).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact, but it need not negate the elements of the nonmoving party's case. Fed. R. Civ.

P. 56(a); *Willis*, 61 F.3d at 315 (citing *Celotex*, 477 U.S. at 322-23); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). If the burden of proof at trial lies with the nonmoving party, the moving party may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. However, "[i]f the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

Once the moving party has met its burden, the nonmoving party must come forward with specific evidence and articulate how it supports its claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Simply resting on the allegations in the pleadings will not suffice. Neither will this burden be satisfied "by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court must draw all reasonable inferences in the light most favorable to the nonmoving party, and it cannot make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from liability for civil damages so long as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To overcome a defense of qualified immunity, the plaintiff must satisfy a "two-prong test." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, the plaintiff must allege that the defendants committed a constitutional violation under current law. *Id.* Second, the plaintiff must allege that "the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* The order in which the Court evaluates these two questions is now left to the Court's discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## III. ANALYSIS

Following the Court's ruling on the Defendants' Motion to Dismiss (see Doc. Nos. 40, 47), several claims against both Sergeant Fausset and the City remain. By this motion, Defendants seek summary judgment as to all claims brought by Ms. Neal, against all of the Defendants. In addition to seeking summary judgment on the merits of each claim, Sgt. Fausset also invokes qualified immunity. The Court discusses each claim below.

### A.  Sergeant Fausset

#### 1. Fourth Amendment: Unlawful Arrest

Ms. Neal claims that Mr. Houston was unlawfully arrested in violation of Texas law and the Fourth Amendment, arguing that Sgt. Fausset possessed neither probable cause nor an arrest warrant to support the arrest of Mr. Houston for criminal trespass. It is undisputed that Sgt. Fausset lacked an arrest warrant for Mr. Houston. Ms. Neal argues that the criminal trespass warning given to Mr. Houston was inadequate and did not serve fairly to warn him that he was prohibited from occupying any particular place, including Willow Chase Apartment 107.

Moreover, she claims that Sgt. Fausset did not witness Mr. Houston commit a crime in his presence, contending that Sgt. Fausset never saw Mr. Houston inside Willow Chase Apartment 107, and was never even told that he had been inside the apartment on June 8, 2010. Because Sgt. Fausset lacked either probable cause or a warrant when he arrested Mr. Houston, Ms. Neal argues, Sgt. Fausset violated Mr. Houston's Fourth Amendment right against unreasonable seizures. (*See* Pl.'s Resp. Defs.' Mots. Summ. J. ¶¶ 17-24 ("MSJ Response"; Doc. No. 63).)

Defendants view the facts differently. They claim that Sgt. Fausset was not, in fact, arresting Mr. Houston when he stopped him in the Willow Chase apartment complex. Rather, according to Defendants, Sgt. Fausset was conducting an investigative detention pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), even though he had instructed Mr. Houston to approach him and to turn around, had taken hold of Mr. Houston's arm, and had verbally informed Mr. Houston that he was placing him under arrest.[3] (See Doc. Nos. 56-12; 56-13 at 64:16-65:2, 67:13-68:6; 56-20 at 2; 63-3; 63-4 at 2; 68-1 at 64:16-65:2, 67:13-68:6.) They claim that Sgt. Fausset did not use "arrest" in a technical, legal sense, and that his intent was to detain Mr. Houston and investigate further. MSJ Memo. ¶ 6. Defendants assert that Sgt. Fausset had the reasonable suspicion to make such an investigative detention. (*See id.* ¶¶ 2-7.)

There is no dispute that Sgt. Fausset took hold of Mr. Houston's right wrist and told him that he was under arrest for criminal trespass. Nor is there any dispute that, after Sgt. Fausset did that, Mr. Houston pulled his arm from Sgt. Fausset's grip and fled through the Willow Chase apartment complex. (See Doc. Nos. 56-20 at 2; 56-13 at 64:16-23, 68:16-69:1; 63-4 at 2; 68-1 at 68:16-69:1). Finally, there is no dispute that this confrontation was a seizure within the meaning of the Fourth Amendment. The only question is what kind of seizure it was. The Court need not

---

[3] Indeed, Ms. Neal uses just those facts to support her contention that Sgt. Fausset was actually in the process of arresting Mr. Houston.

6

resolve this question, though, because however the initial seizure is analyzed, there was probable cause to support the arrest.

Fifth Circuit law is clear that, "[c]laims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest. Thus, we have found that "[i]f there was probable cause for *any* of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails." *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citing and quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)). Here, Sgt. Fausset's Incident Report lists three charges supporting the arrest: criminal trespass, resisting arrest, and evading arrest or detention. (Doc. Nos. 56-20 at 1; 63-4 at 1.) The parties dispute the legal validity of the grounds for arrest for criminal trespass. The Court need not resolve this conflict either, because, regardless of the validity of that *particular charge*, there can be no question (no matter how the seizure is analyzed) that Sgt. Fausset possessed probable cause for arrest on at least one of the other charges for which Mr. Houston was arrested: resisting arrest and evading arrest or detention.[4]

If the seizure in question is analyzed as an arrest, as Ms. Neal urges – that Sgt. Fausset was in the process of making a custodial arrest of Mr. Houston when Mr. Houston broke Sgt. Fausset's grip and fled – then the resisting arrest charge by itself provides sufficient probable cause for the arrest. The Fifth Circuit has recognized both that, "[i]n Texas, the act of resisting can supply probable cause for the arrest itself," and that, "[t]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest." *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013). Thus, if the initial seizure is properly understood as an arrest, this Court can only reason as the Fifth Circuit did in *Martinez*, that, "under Texas

---

[4] Ms. Neal concedes that once Mr. Houston fled, Sgt. Fausset had probable cause for the arrest. MSJ Resp. ¶ 30.

law [Sgt. Fausset] could have reasonably concluded that [Mr. Houston] committed the offense of resisting arrest when [Mr. Houston] pulled his arm away from [Sgt. Fausset's] grasp." *Id.* Importantly, Ms. Neal's concerns about the legality of the arrest are inapposite in this circumstance because, under the Texas resisting arrest statute, "[i]t is no defense to prosecution under this section that the arrest or search was unlawful." Tex. Penal Code § 38.03(b).

However, probable cause for resisting arrest would not justify the arrest if the initial seizure is viewed as an investigative detention. This is because the resisting arrest statute does not encompass investigative detentions. *See* Tex. Penal Code § 38.03(a) (addressing the situations of "arrest, search, or transportation of the actor or another"); *Molina v. State*, 754 S.W.2d 468, 474 (Tex. App.—San Antonio 1988, no writ) ("TEX. PENAL CODE § 38.03 contemplates resisting an effort to implement traditional arrest and not, as appellant argues, resisting an investigative detention or stop."); *United States v. Berry*, --- F. Supp. 2d. ---, No. 3:13-CR-465-L, 2014 WL 2572781, at *4 n.4 (N.D. Tex. June 9, 2014) ("The plain language of section 38.03(a) and the statutory definition of arrest clearly contemplate a 'traditional arrest' as opposed to a detention.") (citing *Molina*, 754 S.W. 2d at 474).

But, because the Texas statute criminalizing evasion of arrest also encompasses detention, probable cause for evading arrest or detention would justify the arrest, even if the initial seizure were understood as an investigative detention. *See* Tex. Penal Code § 38.04(a) ("A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or *detain* him.") (emphasis added). Thus, if Sgt. Fausset's initial contact was a detention, as Defendants maintain, Sgt. Fausset had probable cause to support an arrest as soon as Mr. Houston fled, but only if the detention was lawful. *Id.*; *see Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004).

The Court is persuaded that such a detention would have been lawful because, at the very least, Sgt. Fausset had the reasonable suspicion necessary to effect an investigative detention. "Reasonable suspicion means suspicion that is 'supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion.'" *Gonzales v. City of Corpus Christi*, No. C.A. C–05–280, 2006 WL 213980, at *3 (S.D. Tex. Jan. 25, 2006) (quoting *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994)). While there are no bright line rules spelling out what constitutes reasonable suspicion in every situation, it is clear that it requires more objective indicia than a "hunch," but less than probable cause, and is judged in light of the totality of the circumstances. *See Michelletti*, 13 F.3d at 840; *United States v. Silva*, 957 F.2d 157, 159-60 (5th Cir. 1992) ("An officer is justified in detaining an individual for investigation if, based on specific articulable facts together with rational inferences from the facts, he suspects that an individual may be engaged in criminal activity.").

Here, it is undisputed that: 1) Sgt. Fausset witnessed Mr. Houston in the area of Willow Chase Apartment 107 when Mr. Houston previously had been issued a criminal trespass warning; 2) that Sgt. Fausset knew that Mr. Houston had been connected to a 911 call from that apartment earlier the same day; and 3) that Mr. Houston was present near Apartment 107 only a short while after a second 911 call. (*See* Doc. Nos. 56-13 at 39:20-41:8, 50:7-13; 56-20 at 1-2; 63-4 at 1-2; 68-1 at 39:20-41:8, 50:7-13 ("Well, I was attempting to detain him so that I could obtain further information about what had occurred. I hadn't had an opportunity to speak with anybody at the apartment yet as to what was going on or why the 9-1-1 call had occurred."); 56-12; 56-28 at 4-5; 63-3.) On this record, while the Court does not decide whether Sgt. Fausset was effecting an arrest or a detention when he took hold of Mr. Houston, the Court does conclude that, at the very least, Sgt. Fausset had reasonable suspicion to detain Mr. Houston, and thus

could have been lawfully detaining Mr. Houston when he fled. This, in turn, supports probable cause for the charge of evading arrest or detention under Texas law, and therefore justifies the arrest.

Accordingly, here, the Court must conclude that, in arresting Mr. Houston, Sgt. Fausset did not violate Mr. Houston's Fourth Amendment right to be free from unreasonable seizures. Summary judgment is therefore warranted. Because the Court concludes that Sgt. Fausset did not violate Mr. Houston's Fourth Amendment rights in this manner, there is no need for the Court to pursue further the qualified immunity analysis.

### 2. Fourth Amendment: Excessive Force

"To succeed on an excessive force claim, a plaintiff bears the burden of showing '(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable.'" *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). Although the injury need not be "significant" to support an excessive force claim, an injury that is merely de minimis will not suffice. *See id.*

A law enforcement officer, in conducting an investigative detention or arrest, has authority to employ some force or threat of force to effect it. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). But, it is well-established that such force can violate the Fourth Amendment if it becomes excessive. Accordingly, the Supreme Court, in *Graham v. Connor*, established three guideposts for the determination of whether a particular use of force was "excessive to the need." These guideposts—often referred to as the *Graham* factors—are: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to police officers or civilians; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the

scene. *See id.* The *Graham* factors remain the guiding framework for judging whether an officer's use of force was excessive. *See, e.g.*, *Ramirez v. Martinez*, 716 F.3d 369, 377-78 (5th Cir. 2013); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

The factual circumstances which may give rise to an excessive force claim are virtually limitless. Consequently, the objective reasonableness of a particular use of force is highly fact- and context-specific. *See Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005) ("To determine the objective reasonableness of an officer's use of force, 'we pay careful attention to the facts and circumstances of each particular case[.]'") (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998)). It must be judged in light of the information available to the officer at the time. *See Graham*, 490 U.S. at 397. Some amount of deference is afforded to the officer's discretion, as his or her work in real time, in unknown and often dangerous and difficult-to-manage environs, often requires split-second decisions based on evolving information. *See Brown v. Glossip*, 878 F.2d 871, 873 (5th Cir. 1989); *see also Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005). Indeed, "[t]he 'reasonableness' of a particular use of force" cannot be judged "with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

At the same time, the standard is an objective one – whether the use of force was "'objectively reasonable' in light of the facts and circumstances confronting [the officer]" at the time force was employed. *See Graham*, 490 U.S. at 397. Thus, in this analysis, the subjective intent of the defendant in question plays no meaningful role. *See Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012) ("Officers' subjective intent is irrelevant [to qualified immunity]."). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 491 U.S. at 397.

Here, the parties agree that there was an injury: Mr. Houston's death. Further, the parties do not appear to dispute that it resulted from Sgt. Fausset's use of force – his use of the Taser.[5] The parties' disagree as to whether that use of force was excessive to the need and objectively reasonable.

The parties agree that, after Mr. Houston broke free of Sgt. Fausset's grip and began to run away from him, Sgt. Fausset gave chase. From here, though, the facts surrounding Sgt. Fausset's Taser discharges are hotly contested. Based on Sgt. Fausset's deposition testimony and written statements and reports, along with materials relying on them, Defendants argue that, after he started running, Mr. Houston fell, but regained his balance and continued to flee. Defendants claim that Mr. Houston then turned to face Sgt. Fausset, in what Sgt. Fausset perceived was an aggressive and threatening manner. Defendants contend that it was at that point that Sgt. Fausset first discharged his Taser at Mr. Houston. The parties do agree that, after the first Taser discharge, Mr. Houston fell to the ground. After that fall, Defendants argue, Mr. Houston attempted to stand, so Sgt. Fausset discharged his Taser at Mr. Houston once again. Defendants claim that Sgt. Fausset then told Mr. Houston to stay on the ground and get on his stomach. They assert that, at that point, Mr. Houston tried to remove the Taser probes, so Sgt. Fausset discharged his Taser at Mr. Houston a third time. MSJ Memo. ¶ 10.

Ms. Neal, though, argues that Sgt. Fausset first discharged his Taser while he was chasing Mr. Houston. After Mr. Houston fell, she argues, he never attempted to stand, but instead

---

[5] The Court notes that the autopsy report lists Mr. Houston's cause of death as "the combined effects of phencyclidine intoxication, cardiomegaly, and restraint procedures." (Doc. No. 65-40.) It is not at all clear what "restraint procedures" means. Accordingly, the Court *cannot* say that Sgt. Fausset's Taser use (which was intended to restrain Mr. Houston) was *not* a cause of his death. *See Bailey v. Quiroga*, 517 F. App'x 268, 268 (5th Cir. 2013) ("Plaintiff in this case was not required to present evidence that Defendants' use of excessive force was the *exclusive* cause of her son's death; so long as the injury resulted from clearly excessive and objectively unreasonable force, her claim is actionable." (internal quotation marks omitted)).

remained motionless on the ground. Then, she claims, Sgt. Fausset discharged his Taser at Mr. Houston twice more at a close range, and that Mr. Houston's only physical response was that of his body reacting to the electricity from the Taser. MSJ Resp. ¶ 26. In support, Ms. Neal produces depositions from two witnesses, Don Turner and Alicia Ashton. Mr. Turner's narration of the events contradicts Sgt. Fausset's. Mr. Turner reports that "[Sgt. Fausset] told him to stop and he hit him with the Taser and he hit the ground and he told him to turn over. He never did respond." (Doc. Nos. 56-15 at 13:16-23; 68-3 at 13:16-23.) Mr. Turner explained that he was describing the first time he saw Mr. Houston Tased. (*Id.* at 13:8-15.) Mr. Turner also reports that he heard the Taser go off three times, and that Mr. Houston did not move once he fell to the ground. (*Id.* at 30:15-31:4.) Ms. Ashton stated that when Mr. Houston was running, "[t]he police was behind him. Once he Tased him, he fell to the ground . . . So [Sgt. Fausset] was saying, like, 'Turn over, lay down,' and he did the Taser. He just kept yelling, 'Lay down,' when [Mr. Houston] – he was laying down on his stomach. Like every time he Tasered him, he'll jump up like that . . . I guess though he was still up or whatever, but I don't know. And he – he did it like three times." (Doc. Nos. 56-14 at 17:9-18:1; 69 at 17:9-18:1.) She stated that when he discharged the Taser that final two times, Sgt. Fausset was in close proximity to Mr. Houston. (*Id.* at 18:2-10.)

Defendants note that Mr. Turner also testified that Mr. Houston was struck by the Taser in the back, and that he fell face-first to the ground. (Doc. Nos. 56-15 at 9:10-21; 68-3 at 9:1-21.) As Defendants point out, the autopsy report for Mr. Houston unequivocally demonstrates that Mr. Houston was struck by the Taser probes in the chest, not in the back, disproving this aspect of Mr. Turner's narrative. (Doc. Nos. 65-40.) This inaccuracy does not affect the Court's understanding of the material facts, however. Mr. Turner's testimony was clear that Mr. Houston

fell to the ground after the first Taser discharge, and subsequently did not attempt to stand up or remove the Taser probes as Sgt. Fausset contends. The question of whether Mr. Houston was facing Sgt. Fausset when the Taser was discharged is irrelevant to the operative issue: whether or not Mr. Houston lay motionless on the ground while Sgt. Fausset discharged his Taser at him from a close range.

In addition, Ms. Ashton stated that, "Like every time he Tasered him, he'll *jump up* like that." (Doc. Nos. 56-14 at 17:22-24; 69 at 17:22-24 (emphasis added).) Defendants interpret this statement to support their version of events, as though it described Mr. Houston attempting to stand after he was Tased. Ms. Neal, however, contends that it is merely a description of Mr. Houston's physical reaction to the electricity coursing through his body. The Court agrees that, on a fair read in context, Ms. Ashton's statement supports Ms. Neal. For example, later in her deposition, Ms. Ashton states, "He kept shooting the Taser, and every time he'll shoot him, he'll jump up like that off the ground (indicating), *fall back down*." (Doc. Nos. 56-14 at 21:24-22:4; 69 at 21:24-22:4 (emphasis added).) At the very least, Mr. Turner's statement contradicts Sgt. Fausset's and Ms. Ashton's is ambiguous. Finally, Defendants point to Sgt. Fausset's repeated commands to "stay on the ground" throughout his use of the Taser, as supporting his version of the events. (Doc. Nos. 56-12; 63-3.) While they are consistent with Sgt. Fausset's report, these oral commands are not themselves entirely conclusive. In sum, the Court cannot resolve this factual dispute – it is ripe for a jury's determination.[6]

---

[6] Though none of the parties draws much attention to them regarding this issue, recordings of two other statements, from eye witnesses Marquisha Williams and Calvinette Lewis Houston, are also in the summary judgment record. (Doc. Nos. 56-48; 56-54; 66-1; 66-2.) Both of these statements are consistent with Mr. Turner's and Ms. Ashton's testimonies, as they both report that Mr. Houston was either unresponsive or did not attempt to stand after he fell to the ground.

Thus, while the Court acknowledges that there are factual inaccuracies or ambiguities in both Mr. Turner's and Ms. Ashton's narratives, the Court nevertheless is persuaded that Ms. Neal has offered sufficient evidence to create a genuine issue of material fact as to the circumstances surrounding Sgt. Fausset's discharges of his Taser, particularly regarding Mr. Houston's actions. This fact issue precludes summary judgment as to whether Sgt. Fausset used excessive force in violation of the Fourth Amendment. Specifically, the Court is persuaded that Sgt. Fausset did not use excessive force with his first discharge of the Taser. However, the Fifth Circuit has ruled that an officer "should have known that he could not continue to shock [an individual] with the taser after he was no longer resisting arrest." *Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012). Such a determination casts into doubt the constitutionality of Sgt. Fausset's second and third Taser discharges, at least under Ms. Neal's set of facts.

Analysis under the *Graham* factors supports these conclusions. The Court begins with the first Taser discharge. The alleged underlying offense, criminal trespass, was not serious; this supports a finding of excessive force. The second prong is less clear-cut, though. It is undisputed that Mr. Houston was unarmed at the time; Sgt. Fausset concedes that he never observed Mr. Houston with any weapon. (Doc. Nos. 56-13 at 65:23-66:19; 68-1 at 65:23-66:19.) Nor did Sgt. Fausset, who had had some previous contact with him, know Mr. Houston to be a violent person. (*Id.* at 66:20-27:4.) However, Sgt. Fausset testified that Mr. Houston did present a threat once he broke away because of his height and athleticism, because of the presence of bystanders and the risk of exposing anything Sgt. Fausset had on his person, including his weapon; and because Sgt. Fausset was alone. (*Id.* at 68:3-15.) This factor weighs against finding excessive force, but only slightly. Third, it is undisputed that Mr. Houston did forcibly break free of Sgt. Fausset's grip and flee from custody, and was actively attempting to do so when Sgt. Fausset first discharged

his Taser; this weighs strongly against finding excessive force. Accordingly, Sgt. Fausset's first discharge of the Taser survives the *Graham* analysis.

It is undisputed that Sgt. Fausset discharged his Taser two more times. Here, if the Court accepts Sgt. Fausset's version of the facts, the Court's analysis of the first *Graham* factor remains unchanged. The second factor weighs more strongly against finding excessive force, though. According to Sgt. Fausset, before the first discharge of the Taser, Mr. Houston "turned toward [him] with his fists clinched [sic] as if he was going to assault [him.]" (*Id.* at 73:5-8). Sgt. Fausset claims that the second discharge was preceded by Mr. Houston attempting to stand after he fell, and that, before the third discharge, Mr. Houston attempted to remove the Taser probes. (Doc. Nos. 56-20 at 2; 63-4 at 2.) Particularly in light of Mr. Houston's alleged previous aggressive behavior, the Court finds that, if it were to accept Sgt. Fausset's version of the facts, this factor can only weigh against a finding of excessive force. The third factor weighs more strongly against finding excessive force under Sgt. Fausset's version because, in that version, as the above events show, Mr. Houston actively continued to try to evade Sgt. Fausset's custody, through the third discharge of the Taser.

On Ms. Neal's version of the facts, however, the picture is very different. Again, the first factor remains unchanged. The second factor supports a finding of excessive force, though, as, on Ms. Neal's set of facts, after Mr. Houston fell the first time, he never again rose from the ground. The Court cannot say that he then posed a danger to Sgt. Fausset or to the public. The third prong too supports a finding of excessive force, because, once Mr. Houston had fallen and failed to rise or even to attempt to rise, he clearly was no longer fleeing custody.

Ms. Neal has succeeded in raising a genuine issue of material fact as to exactly what happened regarding Sgt. Fausset's discharges of his Taser, particularly the second and third

discharges. This fact issue sets Sgt. Fausset's version of the facts against Ms. Neal's, and only the jury may resolve this conflict.

Nevertheless, Sgt. Fausset has invoked qualified immunity, which, if he were successful, would relieve him of liability for the violation of Mr. Houston's constitutional rights, even assuming the facts are what Ms. Neal holds them out to be. The Court is satisfied that this very same factual issue precludes it from granting Sgt. Fausset qualified immunity. As the Fifth Circuit has reasoned, an officer "should have known that he could not continue to shock [an individual] with the taser after he was no longer resisting arrest." *Anderson*, 480 F. App'x at 773; *see Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (concluding that an officer "should have known that he could not forcefully slam Bush's face into a vehicle while she was restrained and subdued."). Importantly, the Fifth Circuit found that this was clearly established in 2008, when the events in *Anderson* occurred. *See Anderson*, 480 F. App'x at 769. Therefore, this Court can only conclude that it was also clearly established in 2010, when the tragic events in this case took place. Without resolving the basic factual issues surrounding Sgt. Fausset's Taser use, the Court cannot grant Sgt. Fausset the qualified immunity he seeks as to this claim. Accordingly, summary judgment is not warranted.

### 3. Fourteenth Amendment: Deprivation of Medical Care

"The Due Process Clause of the Fourteenth Amendment guarantees that a person detained by the police is entitled to medical care." *Carter v. Reach*, 399 F. App'x 941, 942 (5th Cir. 2010) (citing *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000)). Law enforcement officers violate that right if they are deliberately indifferent to a serious illness or injury; mere negligence is insufficient to violate this constitutional right. *Id.* (citing *Jacobs*, 228 F.3d at 393); *see Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645-46 (5th Cir. 1996).

"Deliberate indifference encompasses only 'unnecessary and wanton infliction of pain' or acts 'repugnant to the conscience of mankind.'" *Carter*, 399 F. App'x at 942 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). Accordingly, to show deliberate indifference, a plaintiff must show that an officer knows of "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). In other words, a plaintiff "must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Important here, the deliberate indifference inquiry is a subjective one; a plaintiff must show that the "officials were actually aware of the [medical] risk, yet consciously disregarded it." *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 839 (1994)). Within this analysis, "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

Ms. Neal alleges that Sgt. Fausset was deliberately indifferent to Mr. Houston's medical needs because Sgt. Fausset failed to seek immediate or better medical care after he discharged his Taser at Mr. Houston, in violation of the due process protections of the Fourteenth Amendment. As further evidence of Sgt. Fausset's deliberate indifference, Ms. Neal points to Sgt. Fausset's actions of "laughing and shaking his head" while EMS personnel were caring for Mr. Houston at the scene of the Taser discharge. (MSJ Resp. ¶ 49.) Defendants respond that Sgt. Fausset not only did not act (or fail to) with the requisite culpability, his actions were entirely appropriate. (MSJ Memo. ¶¶ 19-20.)

The undisputed record evidence shows that by 11:57 p.m., Mr. Houston was lying on the ground after Sgt. Fausset discharged his Taser at him. (Doc. Nos. 56-12; 63-3.) By 11:58 p.m., Sgt. Fausset informed police dispatch that he had discharged his Taser. (Doc. No. 56-28 at 5.) Less than a minute later, Sgt. Fausset was joined by Officer Spillers. (Doc. Nos. 56-12; 63-3.) Sgt. Fausset ordered Officer Spillers to handcuff Mr. Houston, which Officer Spillers did. (Doc. Nos. 56-12; 56-22; 63-3.) The record shows that Officer Spillers checked Mr. Houston's pulse at that point, and he felt a faint pulse. (*Id.*) Sgt. Fausset requested EMS at 11:59 p.m, and requested a quicker response from EMS at 12:01 a.m. (Doc. Nos. 56-12; 63-3.) In all, there was no more than about two minutes between the time that Sgt. Fausset discharged his Taser and the time that he called EMS. Further, as they were waiting for EMS to arrive, Sgt. Fausset and Officer Spillers rolled Mr. Houston onto his back in order to ease his breathing. (Doc. Nos. 56-20 at 2; 56-22 at 1; 56-33 at 1; 63-4.)

On this record, the Court cannot say that Sgt. Fausset acted or failed to act with the requisite deliberate indifference to Mr. Houston's medical needs. At no time, according to the record before the Court, did Sgt. Fausset refuse to treat Mr. Houston, ignore his medical needs, intentionally treat him incorrectly, or engage in any other conduct displaying a disregard for Mr. Houston's serious medical needs. *See Domino*, 239 F.3d at 756; *Farmer*, 511 U.S. at 847. Even if Sgt. Fausset *should* have recognized that Mr. Houston's medical condition may have required additional attention, she herself argues that Sgt. Fausset had not been trained to recognize the symptoms of "Excited Delirium," the medical condition which she argues required a greater medical response from Sgt. Fausset. (MSJ Resp. ¶ 32.) However, the law is clear that Sgt. Fausset cannot be *deliberately* indifferent to a risk of which he is unaware. *See Lawson*, 286 F.3d at 262. Nor can the Court say, on this record, that it was obvious that more or different care was

required. Under these facts and Fifth Circuit law, the Court simply cannot find for Ms. Neal; summary judgment is warranted as to this claim. Because the Court concludes that Sgt. Fausset did not violate Mr. Houston's Fourteenth Amendment Due Process right to adequate medical care, there is no need for the Court to pursue further the qualified immunity analysis.

### 4. Fourteenth Amendment: Equal Protection

Ms. Neal claims that Sgt. Fausset violated Mr. Houston's right to the equal protection of the laws, as guaranteed by the Fourteenth Amendment. Both the equal protection allegations in Ms. Neal's Complaint and the arguments in her summary judgment briefing are threadbare and unclear, however. In fact, the crux of Ms. Neal's equal protection complaint does not appear to be any different from her deprivation of medical care claim, which also arises under the Fourteenth Amendment. Importantly, nowhere does Ms. Neal highlight or discuss facts *or* even allegations either that Sgt. Fausset intentionally discriminated against Mr. Houston because Mr. Houston was a member of a protected class, or that Mr. Houston was in some way treated dissimilarly from similarly situated individuals without rational basis – these are at the heart of the equal protection analysis. *See, e.g.*, *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) ("To state an equal-protection claim, a § 1983 plaintiff must allege a state actor intentionally discriminated against him because he was a member of a protected class."); *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007) ("To establish [a "class of one" equal protection] claim, the plaintiff must show that (1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Consequently, the Court cannot find that Sgt. Fausset violated Mr. Houston's rights under the Equal Protection Clause, and summary judgment is appropriate. Because the Court concludes that Sgt. Fausset did not violate Mr.

Houston's Fourteenth Amendment Equal Protection rights, there is no need for the Court to pursue further the qualified immunity analysis.

### B.  City of Hempstead

Most of Ms. Neal's claims against the City of Hempstead are foreclosed because Ms. Neal has predicated the City's derivative liability upon constitutional violations allegedly committed by Sgt. Fausset, violations which the Court has concluded she has not shown. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers," if "the officer inflicted no constitutional harm.") "Since [Sgt. Fausset] did not violate [Mr. Houston's] constitutional rights, neither did the City." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010). Therefore, summary judgment is appropriate as to Ms. Neal's municipal liability claims insofar as they are predicated upon her unconstitutional arrest, unconstitutional denial of medical care, or unconstitutional denial of equal protection allegations. Ms. Neal simply has not shown that Sgt. Fausset – or any other City of Hempstead actor – violated Mr. Houston's constitutional rights in those ways. Consequently, the Court can entertain Ms. Neal's municipal liability arguments only as they relate to the sole constitutional claim to survive summary judgment, the Fourth Amendment excessive force claim.

However, it is entirely unclear which – if any – of the municipal liability claims Ms. Neal brings in regard to the excessive force claim. The only summary judgment evidence in the record addressing Ms. Neal's failure to train claim concerns a failure to train Sgt. Fausset regarding criminal trespass and the "Excited Delirium" medical condition, connected with Ms. Neal's unconstitutional arrest and deprivation of medical care claims – but not connected to her

excessive force claim. (*See* MSJ Resp. ¶¶ 32-33.) Indeed, nowhere does she provide either argument or evidence that the City's training regarding the use of Tasers, or even other methods of force or restraint, was in any way inadequate.

Furthermore, failure to train, failure to supervise, and deficient hiring claims – indeed any claim for municipal liability under § 1983 – require that a plaintiff demonstrate that the municipality's deficient training, supervision, or hiring policy or program was a "moving force" in causing the violation of the plaintiff's rights. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010); *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *see Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008) (requiring a "causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights"); *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 461 (5th Cir. 2000) (the constitutional violation must be a "plainly obvious consequence" of the hiring decision) (citing *Bryan County v. Brown*, 520 U.S. 397, 411 (1997)). In order to survive summary judgment, then, Ms. Neal must demonstrate that the City's training, supervision, or hiring programs were a "moving force" behind Sgt. Fausset's alleged use of excessive force. Ms. Neal, however, produces no evidence or argument specifically connecting any City policy – training, supervision, hiring, or any other – to Sgt. Fausset's alleged use of excessive force. Consequently, the Court must grant summary judgment on these claims as well.

### C. State Law "Gross Negligence and Malice" Claim

Defendants also seek summary judgment regarding Ms. Neal's somewhat ambiguously pleaded "Gross Negligence and Malice" claim. (FAC ¶ 45.) This claim is not entirely clear, but Defendants argue for its dismissal. Ms. Neal has not responded to Defendants' arguments. The Court is persuaded that the claim should be dismissed.

First, if it is a claim against the City, it should be dismissed for the same reasons that the Court previously dismissed Ms. Neal's other tort claims against the City, which were brought under the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code §§ 101.001-101.109. (*See* Doc. No. 47.) The Court incorporates its reasoning from its Memorandum and Order addressing the motion to dismiss. (*Id.*) Just as there, this claim attempts to mask Sgt. Fausset's intentional torts as "Gross Negligence and Malice." The Court cannot but conclude that this is sufficient to bring the claim within the intentional tort exception to the Texas Civil Practice and Remedies Code's waiver of sovereign immunity. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(2), 101.057(2); *Holland v. City of Houston*, 41 F. Supp. 2d 678, 713 (S.D. Tex. 1999) ("Where the essence of a claim under the TTCA arises from an intentional tort, allegations of negligence are insufficient to avoid the § 101.057 exception to liability.").

If, on the other hand, the claim is one against Sgt. Fausset, Defendants are correct that it is barred by the election of remedies provisions of the TTCA. The relevant statute, Section 101.106(e) of the Texas Civil Practice and Remedies Code, requires: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Thus, "[o]nce the governmental unit files a motion to dismiss the claims against its employee under section 101.106(e), the trial court must grant the motion and dismiss the claims against the employee from the suit." *Cooper v. City of Plano*, No. 4:10–CV–689, 2011 WL 4100721, at *9 (E.D. Tex. Aug. 19, 2011). Section 101.106(e) is not limited to tort claims for which the TTCA waives immunity; rather, "because the TTCA '[is] the only avenue for common-law recovery against a governmental unit, all tort claims against such units [are] assumed to be 'under this chapter' for purposes of § 101.106." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 463 (5th Cir. 2010) (citing

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658-59 (Tex. 2008)). Therefore, "if a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves." *Id. See Freeman v. City of Fort Worth, Tex.*, No. 4:10–CV–888–Y, 2011 WL 2669111, at *10 (N.D. Tex. July 7, 2011); *Jathanna v. Spring Branch Indep. Sch. Dist.*, No. H-12-1047, 2012 WL 6096675, at *4-*6 (S.D. Tex. Dec. 7, 2012); *Olvera v. Alderete*, No. 4:10-CV-2127, 2010 WL 4962964, at *14 (S.D. Tex. Dec. 1, 2010).

In *Bustos v. Martini Club*, the plaintiff brought state common law intentional tort claims against several San Antonio police officers following a fight at a night club. 599 F.3d 458, 464 (5th Cir. 2010). The plaintiff in that case also brought a negligent hiring and supervision claim against the City of San Antonio. The Fifth Circuit concluded that the plaintiff clearly did bring a negligent hiring and supervision claim against the City "that is rooted in the same alleged common law violations" as the officers' intentional torts. *Id.* On this basis, the Fifth Circuit upheld the district court's dismissal of the claims against the officers under the TTCA. *Id.* The Court is persuaded that Ms. Neal's "Gross Negligence and Malice" claim is "rooted in" the same state common law negligence torts brought against the City alone, and therefore dismissal is required by the TTCA.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** summary judgment as to Ms. Neal's unlawful arrest claim, unconstitutional denial of medical care claim, and unconstitutional denial of equal protection claim, all of which are pleaded against Sgt. Fausset. The Court **DENIES** summary judgment as to Ms. Neal's excessive force claim, which is also pleaded against Sgt. Fausset. In

addition, the Court **GRANTS** summary judgment as to all of Ms. Neal's municipal liability claims. The Court also **DISMISSES** Ms. Neal's "Gross Negligence and Malice" claim.

   **IT IS SO ORDERED.**

   **SIGNED** at Houston, Texas on this the eleventh day of August, 2014.

             _____
             KEITH P. ELLISON
             UNITED STATES DISTRICT JUDGE