UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARRELLE NEAL, | § | |
| as Representative of the Estate of | § | |
| TERRELLE HOUSTON | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:12-cv-1733 |
| | § | |
| CITY OF HEMPSTEAD, TEXAS, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this civil rights action is Defendants' Motion to Exclude or Limit the Testimony of Plaintiffs' Purported Expert Jerry Ray Staton. ("Defendants' Motion"; Doc. No. 54.) Defendants contest the admissibility at trial of testimony to be given by Mr. Staton, a police practices expert designated by Plaintiff Darrelle Neal.[1] After considering the motion, the response thereto, the record, and the applicable law, the Court concludes that Defendants' Motion should be **GRANTED IN PART** and **DENIED IN PART**.

## I.     LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. A court is charged with a "gatekeeping function" to ensure expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The party seeking to rely on expert testimony bears the burden of establishing, by a preponderance of the evidence, that all

---

[1] The Court has previously decided both a motion to dismiss and a summary judgment motion in this case, both of which set out the factual background in detail. (Doc. Nos. 47, 73.) The Court incorporates that background material here.

requirements have been met. *Daubert*, 509 U.S. at 593, n.10; *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1988). The Court is mindful that "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Comm.'s Note (2000).

Reliability is analyzed under Rule 702, which requires that: (1) the testimony will help the trier of fact to understand the evidence or determine a fact, (2) the testimony is based upon sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. As to the third prong, the Supreme Court has provided five, non-exclusive factors to consider when assessing whether a methodology is scientifically reliable. These factors are (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94. The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999) (recognizing that the "factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony"). The party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are reliable, but need not show that the expert's findings and conclusions are correct. *Moore*, 151 F.3d at 276.

When undertaking the second step of the analysis, which asks whether the proffered expert testimony is relevant, a court must demand "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 592. Expert testimony "which

2

does not relate to any issue in the case is not relevant." *Id.* According to the Supreme Court, the relevance question has been "aptly described" as one of "'fit.'" *Id.* (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)).

In addition, the expert witness must be qualified "by knowledge, skill, experience, training, or education . . . ." Fed. R. Evid. 702. A court should exclude an expert witness "if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citing *Daubert*, 509 U.S. at 596).

Under Rule 704(a), "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a); *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999). "Rule 704, however, does not open the door to all opinions." *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Expert witnesses may neither tell the jury what result to reach nor provide legal conclusions. *Id.*

## II.    ANALYSIS

Defendants object to Ms. Neal's expert witness regarding law enforcement practices, Jerry Ray Staton. They challenge his qualifications, the relevance of his opinions, and the reliability of his methodology. The Court will discuss each in what follows.

### A.  Qualifications

Regarding Mr. Staton's qualifications, Defendants first argue that, because Mr. Staton does not typically serve as an expert witness in cases raising precisely the same issues as this one, the Court should exclude his expert testimony. However, just because Mr. Staton does not

*generally* act as an expert witness is cases similar to this does not mean that Mr. Staton is not

qualified to do so. A jury might reason that an expert witness selective about cases in which he

testifies is more credible than an expert witness who testifies regularly and depends on such

testimony for his livelihood. Defendants also claim that Mr. Staton did not use a scientific

technique in reaching his conclusions, and therefore, he is unqualified. However, Rule 702 and

the case law interpreting it specifically provide that a witness may be qualified as an expert

through "knowledge, skill, experience, training or education." *See Kumho*, 526 U.S. at 156

("[N]o one denies that an expert might draw a conclusion from a set of observations based on

extensive and specialized experience."). Thus, the Court finds that, contrary to Defendants'

assertions, an expert's lack of reliance on a strictly scientific technique does not necessarily

render that expert unqualified. The Court must, however, satisfy itself that the absence of such a

scientific technique does not render Mr. Staton's opinions unreliable. *Kumho*, 526 U.S. at 152

(when evaluating the admissibility of expert testimony, courts should "make certain that an

expert, whether basing testimony upon professional studies or personal experiences, employs in

the courtroom the same level of intellectual rigor that characterizes the practice of an expert in

the relevant field."); *see Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

Accordingly, the Court finds that Mr. Staton's experience and training are sufficient to

qualify him as an expert on law enforcement practices in this case. Mr. Staton has worked in law

enforcement for decades, spending twenty-five years as an officer with the Austin, Texas Police

Department, and almost fifteen more as a consultant. Most relevant to this case, Mr. Staton has

been a certified Taser instructor for well over a decade. He holds over fifty different

certifications from the State of Texas Commission on Law Enforcement Officer Standards and

Education ("TCLEOSE"), including certification by the State of Texas as a peace officer

instructor. TCLEOSE (now known as the Texas Commission on Law Enforcement, or "TCOLE") is an agency of the State of Texas which evaluates and administers training, certification, and licensing for state and municipal law enforcement officers in the state of Texas. Further, Mr. Staton has worked as an expert witness for over a decade, including testifying in court, in both civil and criminal cases, in both state and federal courts, for both the plaintiff/prosecution and the defense. (Doc. No. 61-2.) With respect to Mr. Staton's qualifications, Ms. Neal must demonstrate that he possesses a higher degree of knowledge, skill, experience, training or education than an ordinary person. *See* Fed. R. Evid. 702. That, she has done. The Court is satisfied that Mr. Staton's experience and training are sufficient to qualify him as an expert witness in this case.

Remarkably, Defendants also claim that, because he does not show that his opinions are dispositive, Mr. Staton is not qualified to be an expert witness, and his testimony should be excluded. Defendants argue that because "[i]t is well settled that mere disagreement between officers of reasonable competence regarding authority to make an arrest, the reasonableness of force used or the manner in which to perform discretionary police duties" is insufficient to defeat qualified immunity, then Mr. Staton's testimony should be excluded unless he can show that "his testimony is more valid that that of everyone else who has considered the issue." Defs.' Mot. ¶¶ 5-6. Tellingly, Defendants cite no law for such a proposition, nor could they, for they fundamentally misapprehend the role of the expert witness. Such a witness is offered only to help the factfinder understand the facts or resolve a disputed issue, not to instruct the factfinder as to what result to reach. *Owen*, 698 F.2d at 240. The factfinder is allowed to consider testimony and evidence from a variety of sources in reaching a reasonableness conclusion. Expert testimony may trump other evidence, but it need not do so to be admissible.

Further, expert testimony is no substitute for traditional adversary methods. Indeed, as the Supreme Court has reminded both bench and bar, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. Here, Defendants argue nothing more than that Mr. Staton's evidence is not, by itself, conclusive. The Court takes no position on that question. But, if true, that is a characteristic better left to "the traditional and appropriate means of attacking shaky but admissible evidence," because it does not per se disqualify Mr. Staton as an expert witness, nor mark his opinions as either irrelevant or unreliable.

### B.  Reliability and Relevance

Defendants' arguments regarding reliability and relevance are intertwined, so the Court will treat them together. As an initial matter, Defendants make several arguments criticizing Mr. Staton's opinions relating to Sgt. Fausset's allegedly unconstitutional arrest of Mr. Houston, to Sgt. Fausset's allegedly unconstitutional denial of medical care to Mr. Houston, and to the City's failure to adequately hire, train, and supervise Sgt. Fausset. The Court need not resolve these objections, however, because, in light of the Court's summary judgment ruling, they are irrelevant. In that ruling, the Court granted summary judgment as to all of Ms. Neal's claims save her claim that Sgt. Fausset violated Mr. Houston's Fourth Amendment rights by using excessive force against him. (*See* Doc. No. 73.) Therefore, only Mr. Staton's opinions regarding the question of whether or not Sgt. Fausset used excessive force are relevant to this case; any other opinions are irrelevant and will not be allowed. Accordingly, the Court will address Defendants' objections to that testimony only.

Defendants contend that Mr. Staton's opinions regarding excessive force are irrelevant and not helpful to the finder of fact because he employs the incorrect constitutional standards in reaching his opinions. Defendants concede that Mr. Staton correctly recognizes *Graham v. Connor*, 490 U.S. 386 (1989), as the constitutional standard applicable in the excessive force context. They point out, however, that Mr. Staton claims that his opinions also rest upon other judicial decisions, decisions which Mr. Staton could not name in his deposition. Moreover, they assert, all he could remember about the decisions is that some may have been Ninth Circuit decisions, which both Defendants and Mr. Staton recognize are not controlling in the Fifth Circuit.

An important clarification is in order here. Mr. Staton does correctly identify the controlling Supreme Court precedent, *Graham*, and also identifies the three factors *Graham* highlights as relevant to the evaluation of whether a particular use of force was excessive. (Doc. No. 56-18 at 28:17-20.) When questioned about Sgt. Fausset's Taser use, Mr. Staton later says that "it would not have been *best practice*." (Doc. No. 56-18 at 29:4-12 (emphasis added).) Notably, he did not say that it was unconstitutional. When pressed on the sources of his opinion that the Taser use in question would not have been a "best practice," Mr. Staton admits that there is no single set of identifiable standards that establish best practices in law enforcement, but, rather, it is "the way that is most accepted." (*Id.* at 30:4-9.) The source of his understanding of such best practices, Mr. Staton testified, is judicial opinions. It is true that, when pressed, he could not, at the deposition, name any specific decisions, though he did state that there were "a couple out of the Ninth Circuit," and that he could, if given some time, identify the relevant decisions. (*Id.* at 31:18-25.) Importantly, Mr. Staton understands that Ninth Circuit decisions are "not necessarily applicable here in Texas." (*Id.* at 31:25-32:1.) Thus, Defendants' criticism is

7

somewhat misplaced; the record does *not* show that Mr. Staton employs the incorrect *constitutional* standard – he cites *Graham* and the relevant evaluative factors correctly. Rather, Defendants' quarrel is more properly with how Mr. Staton reaches the opinion that Sgt. Fausset's use of force may not have comported with "best practices" in law enforcement.

Mr. Staton's opinions regarding best practices are rooted in his expertise and in judicial decisions, and, though Mr. Staton could not pinpoint the precise judicial decisions during his deposition, he could state specifically what the relevant standard is: "the biggest restriction that I'm aware of and that I teach now and have for years is you need active resistance, and then that needs to be defined, and/or a violence or threat of violence for a TAZER to be deployed on someone who is fleeing." (Doc. No. 56-18 at 31:13-17.) *Cf. Benavides v. Cnty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992) (finding expert opinions inadmissible where the expert's qualifications were never presented to the court, and the expert failed to "describe[] the content of the standards to which he referred or explain[] how the [law enforcement officers' training failed to meet those standards.") Such opinions are relevant to, but not dispositive of, the question of the reasonableness of a particular use of force. *See McBroom v. Payne*, No. 1:06cv12222, 2011 WL 1356925, at *3 (S.D. Miss. Apr. 11, 2011); *Escobar v. City of Houston*, No. 04-1945, 2007 WL 2900581, at *9-*11 (S.D. Tex. Sept. 29, 2007). The Court is satisfied that Defendants' criticisms go to the weight to be given to Mr. Staton's opinions regarding best practices, and not their admissibility. *See United States v. 14.38 Acres of Land,* 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

Defendants also criticize Mr. Staton's methodology, claiming that he does not employ one. But, Defendants' arguments regarding the relevance of Mr. Staton's opinions belie such an argument. Defendants assert that Mr. Staton's opinions lack relevance because he could not remember which judicial opinions formed their basis. However, in making that argument, Defendants highlight the methodology Mr. Staton uses − comparison of the alleged facts of a case to relevant judicial opinions, in light of his decades of law enforcement training and experience. Here, Mr. Staton's report and testimony is based on his long personal experience in law enforcement, a relevant and extensive training background, and personal review of the materials at issue. He singles out specific facts important in reaching his opinion, such as that Mr. Houston was fleeing, that he had resisted Sgt. Fausset, and the presence or threat of violence. (Doc. No. 56-18 at 28:9-29:3, 31:13-17.) The Fifth Circuit has found acceptable expert testimony that is "based mainly on [the expert's] personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002). Thus, the Court is persuaded that Mr. Staton's opinions are not unreliable.

### III.   CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion. Mr. Staton may testify as an expert witness, but as the excessive force claim is the only claim that survived summary judgment, the Court limits Mr. Staton's testimony to opinions relevant to that claim alone.

Finally, as is the case with any expert witness, while Mr. Staton may testify to "an ultimate issue" under Federal Rule of Evidence 704, he may not offer legal conclusions. *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999). Thus, while Mr. Staton may testify as to his opinion of the reasonableness of an action, or what a properly trained officer might do, whether a

law enforcement officer's particular Taser use was objectively unreasonable under the Fourth Amendment is such a legal conclusion. *See McBroom v. Payne*, 478 F. App'x 196, 200 (5th Cir. 2012) (citing *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003)). Mr. Staton stated in his deposition that he would not venture to give opinions that are tantamount to legal conclusions (Doc. No. 56-18 at 35:15-17); the Court nevertheless reminds both parties that it will not allow expert witnesses to testify as to whether Sgt. Fausset's Taser use was reasonable under the Fourth Amendment.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the eleventh day of August, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE